IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-cv-91-BO

| | |
|---|---|
| CHRISTOPHER ROSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| ANDREW SAUL, ) | |
| *Commissioner of Social Security*,[1] ) | |
| ) | |
| Defendant. ) | |

This cause comes before the Court on plaintiff's motion for summary judgment [DE 15] and defendant's motion for judgment on the pleadings [DE 17]. A hearing was held on this matter before the undersigned on July 28, 2020 via videoconference. For the reasons discussed below, plaintiff's motion is granted, and defendant's motion is denied.

BACKGROUND

Plaintiff Christopher Rose is an Iraq War combat veteran. Mr. Rose endured a series of traumatic and harrowing episodes during his deployment. As a result, he suffers from, among other things, severe post-traumatic stress disorder, migraine headaches, and insomnia. In December 2016, the Department of Veterans Affairs (VA) Medical Center in Hampton, Virginia evaluated Mr. Rose for disability and gave him a 100% disability rating. His final assessment of 100% disabled was based on a 70% rating for PTSD and a 50% rating for migraine headache disorder.

In March 2018, Mr. Rose protectively filed an application for period of disability and disability insurance benefits under Title II of the Social Security Act, alleging an onset of disability of June 11, 2016 due to PTSD, migraine headaches, tendon injuries to the knee and achilles, and

---

[1] Saul has been substituted as the proper defendant pursuant to Fed. R. Civ. P. 25(d).

Stage 3 kidney cancer. The application was denied initially and upon reconsideration. A Social Security Administrative Law Judge ("ALJ") conducted a hearing on Mr. Rose's application on December 20, 2018. On January 30, 2019, the ALJ issued an unfavorable decision. The ALJ found that Mr. Rose suffered from the following severe impairments: PTSD, idiopathic episodic paresthesia, obstructive sleep apnea, history of kidney cancer with partial nephrectomy, migraines, thyroid nodule, and diabetes mellitus. Tr. 17. The ALJ also found that Mr. Rose was unable to perform any of his prior work. But based on the ALJ's assessment of Mr. Rose's residual functional capacity ("RFC"), she nonetheless concluded that there were a significant number of other jobs in the national economy which Mr. Rose could perform. Tr. 24–25. The ALJ did not mention or discuss the VA's disability rating in her decision.

After the Social Security Appeals Council denied his request for review, Mr. Rose brought this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for disability insurance benefits.

## DISCUSSION

I. The ALJ decision

Under the Social Security Act, an individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

2

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations issued by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, if the Social Security Administration determines that the claimant is currently engaged in substantial gainful activity, the claim is denied. If not, step two asks whether the claimant has a severe impairment or combination of impairments. If the claimant has a severe impairment, it is compared at step three to those in the Listing of Impairments ("Listing") in 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant's impairment meets or medically equals a Listing, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, then the analysis proceeds to step four, where the claimant's residual functional capacity (RFC) is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, then the burden shifts to the Commissioner at step five to show that the claimant—based on age, education, work experience, and RFC—can perform other substantial gainful work. If the claimant cannot perform other work, then the claimant is found to be disabled. *See* 20 C.F.R. § 416.920(a)(4).

Here, the analysis ended at step five when the ALJ considered Mr. Rose's RFC and determined that, although he was unable to perform his past relevant work, he was able to perform other jobs that existed in significant numbers in the national economy.

II. Plaintiff's claims of error

In his written brief, Mr. Rose argues that the ALJ committed the following errors: (1) in assessing the RFC, by failing to make a finding about Mr. Rose's intermittent incapacity caused

3

by the periodically debilitating effects of the PTSD, headache disorder, and fatigue; and (2) at step five, by relying on a response to an incomplete hypothetical question posed to the vocational expert ("VE") witness. At the hearing, however, counsel for Mr. Rose raised a third and salient issue for this Court to consider in its review. Specifically, counsel raised the issue of whether the ALJ erred by failing to afford substantial weight to the VA's 100% disability rating—or at least articulate specific, persuasive reasons why the disability rating should be afforded less than substantial weight.

III. The Court's review

Under 42 U.S.C. § 405(g), this Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner employed the correct legal standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). "[C]ourts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971).

*A. The ALJ erred by failing to consider and afford weight to the VA disability rating.*

Going back decades, the Fourth Circuit has emphasized that ALJs must give weight to certain medical opinions and disability determinations. *See Vitek v. Finch*, 438 F.2d 1157, 1160 (4th Cir. 1971). In *DeLoatche v. Heckler*, the court held that an ALJ must consider as evidence the

4

disability determination of a state agency, and that an ALJ decision which ignored such a determination failed to provide the requisite findings and explanations to enable judicial review. 715 F.2d 148, 150 (4th Cir. 1983). More recently, in *Bird v. Commissioner of Social Security Administration*, the court held that VA ratings must be afforded "substantial weight" unless the ALJ can clearly explain why less weight is appropriate. 699 F.3d 337, 343 (4th Cir. 2012).

In January 2017, the Social Security Administration published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; *see also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). Among other things, these final rules amended the regulations at 20 C.F.R. §§ 404.1504 and 416.904 (decisions by other governmental agencies and nongovernmental entities). The new rules state that, for disability claims filed after March 27, 2017, SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. §§ 404.1504 and 416.904. Despite this, the new rules attempt to assure the claimant that SSA will still "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision . . . ." *Id.* SSA also rescinded SSR 06-03p, a policy directive which had concluded that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."

As noted above, the ALJ in this case did not mention—much less discuss—Mr. Rose's 100% VA disability rating. Citing the new Social Security regulations, the ALJ wrote that she would "not discuss or analyze another agency's or provider's prior opinions about whether [the

5

Claimant is] disabled, blind, employable, or entitled to any benefits." Tr. 23. In the ALJ's view, the new regulations superseded the Fourth Circuit's decision in *Bird*. This was error.

The new rules did not supersede the Fourth Circuit's decision in *Bird*, and the ALJ committed reversible error by failing to afford substantial weight to Mr. Rose's 100% VA rating. The ALJ's assumption that the new SSA regulations supplanted Fourth Circuit case law rests on a fundamental misunderstanding of *Bird* and the cases that preceded it. *Bird* did not interpret a prior regulation, alterable by SSA. Rather, *Bird* followed a line of cases expounding on what is required from the ALJ to enable the Court to conduct its review.

*Bird* began its analysis by invoking *DeLoatche*, 715 F.2d at 150, which explained that the judicial task under § 405(g) was impossible without sufficient findings and explanations from the ALJ. 699 F.3d at 343. An ALJ decision that overlooked an agency disability determination failed in this respect. *DeLoatche*, 715 F.2d at 150. The court then surveyed the widespread agreement between the courts of appeals—as well as within SSA itself—that VA ratings must be considered by ALJs. *Bird*, 699 F.3d at 343 (citing *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985); *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975); and SSR No. 06–03p). After reviewing the overwhelming agreement on the issue, the Court arrived at the heart of its analysis. It reasoned:

> The VA rating decision reached in Bird's case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of Bird's medical condition. Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating.

6

*Id.* This holding was unaffected by SSA's new rules. An ALJ who fails to address a VA disability rating leaves a gap in his or her decision, rendering judicial review impossible. Nowhere is this hole more glaring than in a case like this, where the VA determined that Mr. Rose was 100% disabled. To be sure, VA and SSA employ different technical rules for arriving at their respective determinations. But it stretches the imagination to believe that the difference in methodology accounts for the gap between the VA's 100% disability rating and SSA's finding of not disabled. An ALJ decision that fails to address such a logical gap fails to provide the requisite findings and explanations to enable judicial review.

The Court's reading of *Bird* is buttressed by *Woods v. Berryhill*, where the Fourth Circuit explained that, in order to afford less than substantial weight to another governmental agency's disability determination, the ALJ must give "persuasive, specific, valid reasons." 888 F.3d 686, 692 (4th Cir. 2018). Without such explanation, according to *Woods*, a court "cannot engage in a meaningful review." *Id.* at 692–93. Moreover, *Woods* rejected the Commissioner's argument that the ALJ can escape discussing the other agency's disability decision by merely considering the evidence underlying that decision. *Id.* at 693–94. The court wrote: "[i]t may well be that the ALJ considered this evidence in deciding both which doctors and evidence to credit and whether the [other agency's] decision deserved substantial weight. But meaningful review cannot rest on such guesswork." *Id.* By rejecting this argument, the court necessarily rejected the new SSA regulations' approach.[2] It is not enough that the ALJ purport to engage with the medical evidence

---

[2] In a footnote, *Woods* references the new regulations from 82 Fed. Reg. 5844. 888 F.3d at 691 n.1. The court's reference to the new regulations does not call into question the continuing precedential value of *Bird*. Indeed, *Woods* makes clear that without consideration of a VA decision, judicial review is simply not possible.

7

on which the other agency's decision relied. The decision itself must be discussed, afforded substantial weight, or else qualified with specific reasons.

In this case, the VA determined that Mr. Rose was 100% disabled. The ALJ, on the other hand, determined that Mr. Rose was not disabled. Two government agencies performing similar assessments reached polar opposite conclusions, leaving a glaring hole in the record and preventing judicial review. *Bird* remedies this problem, and SSA's new regulations did not overrule *Bird*. By failing to address Mr. Rose's 100% VA disability rating, the ALJ erred.

> B. *The ALJ erred by failing to make a specific finding on whether plaintiff's intermittent incapacity constitutes an inability to engage in substantial gainful activity.*

The Court also finds that the ALJ committed legal error by not addressing Mr. Rose's periodic incapacity. The evidence presented to the ALJ established that Mr. Rose suffers from multiple conditions, including PTSD, obstructive sleep apnea, and migraines. Symptoms Mr. Rose actively experiences as part of his PTSD include depressed mood, anxiety, chronic sleep impairment, and difficulty adapting to stressful circumstances. Tr. 1345. In his evaluations for his sleep issues—which result in fatigue and daytime somnolence—he was consistently scored as abnormal. Tr. 1604. At the ALJ hearing, Mr. Rose testified extensively about his daytime somnolence, fatigue, and resulting inability to maintain a schedule. Tr. 47–54.

"An individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act." *Totten v. Califano*, 624 F.2d 10, 11 (4th Cir. 1980). And a claimant is not required to "show an inability to engage in any substantial gainful activity every day of his existence." *Id.* The evidence in the record shows that the combined effects of Mr. Rose's PTSD, insomnia, sleep apnea, and headaches cause him to be intermittently incapacitated. While the ALJ limited Mr. Rose to light work, the decision contains no finding or discussion about his

8

ability to perform this work with any regularity or consistency in a competitive employment environment.

Relatedly, the ALJ's decision failed to properly account for Mr. Rose's limitations in concentration, persistence, and pace (CPP). The ALJ found that Mr. Rose had moderate CPP limitations, but in assessing his RFC, only included limitations for "simple and routine tasks." "[T]he ability to perform simple tasks differs from the ability to stay on task." *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). In addressing the CPP limitation in the RFC, the ALJ's only explanation is as follows:

> The evidence shows that the claimant could read books and watch television. He could drive and do basic tasks around the home (Hearing testimony). In light of this as well as evidence discussed elsewhere in this decision, the undersigned believes that the claimant does not have a significant deficit in the area of pace. His moderate limitations in these areas are addressed by limiting him to concentrating and persisting for simple, routine tasks.

Tr. 24. This explanation is unpersuasive. Mr. Rose's ability to read books, watch TV, drive, and do basic tasks around the house says nothing about his ability to stay on task in a work environment. The evidence strongly suggests that Mr. Rose must rest frequently, or at least change tasks regularly, as a result of his daytime somnolence and fatigue. Indeed, this is part of the reason for his intermittent incapacity. The ALJ's explanation for why she included minimal CPP limitations is insufficient.

*C. Remand is appropriate.*

The Court has identified two errors in the ALJ's decision and, therefore, need not address plaintiff's third argument: whether the ALJ relied on a response to an incomplete hypothetical question to the VE. When the ALJ decision lacks sufficient explanation, the proper course is generally to remand to the agency. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). On

9

remand, the ALJ must give substantial weight to the VA's disability determination unless there are specific, persuasive reasons for affording it less weight. Additionally, the ALJ must consider the combined effects of Mr. Rose's impairments and make a finding on his intermittent incapacity. The ALJ must also provide a legitimate explanation—if there is one—for why no additional CPP limitations were included in the RFC.

## CONCLUSION

Having conducted a full review of the record and decision in this matter, the Court concludes that remand is appropriate. Plaintiff's motion [DE 15] is GRANTED and defendant's motion [DE 17] is DENIED. The Commissioner's decision is REMANDED for further proceedings consistent with the foregoing.

SO ORDERED, this __13__ day of August, 2020.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE